IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Hubbell Incorporated; Hubbell Lighting, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> DMF, Inc., d/b/a DMF Lighting, Inc. and DMF Lighting; Fahrenheit Lighting, Inc., d/b/a Fahrenheit Lighting and Fahrenheit, <br><br> Defendants. | C/A No. 6:11-cv-00794-MGL-JDA <br><br><br><br> **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |

This matter is before the Court on a motion to compel and to extend time of discovery filed by Plaintiffs Hubbell Incorporated and Hubbell Lighting, Inc. (collectively, "Hubbell") [Doc. 44] and a second motion to dismiss for lack of jurisdiction or, alternatively, to transfer venue filed by Defendants DMF, Inc. ("DMF") and Fahrenheit Lighting, Inc. ("Fahrenheit," or collectively, "Defendants") [Doc. 47]. Pursuant to the provisions of 28 U.S.C. § 636 and Local Rule 73.02(C)(7), D.S.C., this magistrate judge is authorized to review this pretrial motion and submit findings and recommendations to the District Court.

**PROCEDURAL HISTORY**

On April 1, 2011, Hubbell filed this action alleging infringement of U.S. Patent No. 7,841,135, "Fire Assembly for Recessed Electrical Fixtures."[1] [Doc. 1.] On November 11, 2011, Defendants filed a motion to dismiss for lack of jurisdiction or, alternatively, a motion

---

[1] Hubbell filed an Amended Complaint on May 9, 2011, which clarified the defendants to this action and added Fahrenheit as a defendant. [See Docs. 1, 7.]

to transfer venue. [Doc. 26.] On March 29, 2012, after the motion was fully briefed by both parties [Docs. 28, 32], the Honorable Timothy M. Cain issued an Order denying Defendants' motion without prejudice, with leave to refile following jurisdictional discovery [Doc. 35].

The parties submitted a joint discovery report on April 9, 2012 [Doc. 37], and on April 10, 2012, Judge Cain entered a scheduling order adopting the schedule set forth in the parties' joint discovery plan [Doc. 38]. On July 12, 2012, Hubbell filed a motion to compel and to extend time of discovery. [Doc. 44.] Defendants filed a response in opposition on July 27, 2012 [Doc. 48], and Hubbell filed a reply on August 6, 2012 [Doc. 49]. On July 27, 2012, Defendants filed a second motion to dismiss for lack of jurisdiction or, alternatively, to transfer venue. [Doc. 47.] Hubbell filed a response in opposition on August 13, 2012 [Doc. 52], and Defendants filed a reply on August 23, 2012 [Doc. 57]. Accordingly, the motions are now ripe for review.[2]

## THE PARTIES' POSITIONS

Defendants contend they are not subject to the personal jurisdiction of this Court because (1) Fahrenheit's minimal contacts with South Carolina do not satisfy the high standard for asserting general jurisdiction over Fahrenheit; (2) Fahrenheit's single sale of an infringing product in South Carolina was manufactured by Hubbell and, in any event, is not enough to establish specific jurisdiction over Fahrenheit; (3) there is no specific jurisdiction over DMF because DMF has not sold any of the accused products into South

---

[2] For the reasons explained herein, the Court recommends Defendants' motion to dismiss be granted. Accordingly, the Court recommends Hubbell's motion to compel and to extend time of discovery be found as moot.

2

Carolina; (4) DMF is not subject to general jurisdiction because it has only meager sales of unrelated products in South Carolina and has not sold the accused products anywhere; and (5) no basis for vicarious liability is alleged in the Complaint. [Doc. 47-1 at 5–10.] Defendants point out that DMF and Fahrenheit are separate corporations and contend that, because DMF has not sold any of the accused products anywhere, the controversy—if any—is between only Hubbell and Fahrenheit. [*Id.* at 3, 9–10.] Further, Defendants argue Hubbell cannot establish DMF is Fahrenheit's alter ego:

> Hubbell has conceded that DMF is only subject to personal jurisdiction in South Carolina if Hubbell meets its burden to prove alter ego. But DMF cannot be Fahrenheit's alter ego, for at least these reasons:
>
> > A. Alter ego jurisprudence requires control by a dominant stockholder, yet DMF is not even a stockholder of Fahrenheit and exercises no control over it.
> >
> > B. Fahrenheit is not undercapitalized; it has a healthy balance sheet (which has been stunningly misread by Hubbell).
> >
> > C. Fahrenheit has observed all corporate formalities applicable to it.
> >
> > D. Hubbell cannot prove that any fraud or abuse of the corporate form would cause it to suffer any unfairness or injustice from having to sue the Defendants in California.
> >
> > E. The Court did not find there was jurisdiction over Fahrenheit. Because there is no personal jurisdiction over Fahrenheit in South Carolina, DMF cannot be subject to personal jurisdiction vicariously through Fahrenheit.

[Doc. 57 at 1–2; *see id.* at 3–17.] Finally, Defendants contend that if personal jurisdiction exists over either Defendant or both, under 28 U.S.C. § 1404, transfer of venue to the

3

Central District of California would be in the interest of justice.  [Doc. 47-1 at 11; Doc. 57 at 17.]

Hubbell contends that, in his Order denying Defendants' original motion to dismiss, Judge Cain must have determined the Court has personal jurisdiction over Fahrenheit because there would be no need to investigate alter ego status and corporate veil piercing if Fahrenheit was not subject to the Court's personal jurisdiction.  [Doc. 52 at 1, 2–3.]  Further, Hubbell argues the corporate veil between DMF and Fahrenheit should be disregarded because

> (1) Fahrenheit does not observe corporate formalities, (2) Fahrenheit is severely undercapitalized and continues only with the donated time of DMF employees, (3) Fahrenheit was formed for the express purpose of selling the accused product in violation of plaintiffs' patent rights, and (4) DMF has repeatedly held itself out to the public, the trade and to its insurance company as one and the same company as Fahrenheit.

[*Id.* at 2; *see id.* at 4–11.]  Additionally, Hubbell contends Defendants' motion to transfer venue should be denied because the availability of witnesses and evidence favors the District of South Carolina for the following reasons: (1) Plaintiff Hubbell Lighting, Inc., who is the exclusive licensee of the patent at issue and, thus, directly competes with "DMF/Fahrenheit" for sales of the accused products, resides in this District; (2) the inventor of the patent at issue resides in this District; (3) Carolina Architectural Lighting ("CAL"), Defendants' current sales representative and agent, resides in this District; and (4) CED Greenville, a purchaser of the accused products, resides in this District.  [*Id.* at 11.]

## APPLICABLE LAW

**Motion to Dismiss Standard**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a party may move the court to dismiss an action based on a lack of personal jurisdiction. "[W]hen . . . [a] court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). To satisfy this burden, the plaintiff must base its claim for personal jurisdiction "on specific facts set forth in the record." *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). Accordingly, "[t]he pleadings, affidavits, and other supporting documents presented to the court are construed in the light most favorable to [the] plaintiff, drawing all inferences and resolving all factual disputes in its favor." *Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320, 2000 WL 691100, at *1 (4th Cir. 2000) (unpublished table opinion) (citing *Mylan Labs.*, 2 F.3d at 60); *see also Mylan Labs.*, 2 F.3d at 62 ("In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." (citing *Combs*, 886 F.2d at 676; *Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984))). The court, however, need not "'credit conclusory allegations or draw farfetched inferences.'" *Massellli*, 2000 WL 691100, at *1 (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)).

**Personal Jurisdiction**

In patent cases, the court's subject matter jurisdiction arises under the patent laws; therefore, Federal Circuit law, rather than regional circuit law, controls the analysis of the jurisdictional issue. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed.Cir. 1995)). "A personal jurisdiction determination for an out-of-state defendant is a two step inquiry: 'whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process.'" *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) (quoting *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009)). The applicable state long-arm statute, S.C. Code Ann. § 36-2-803, has been interpreted by South Carolina courts to extend to the outer limits of due process. *Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F. Supp. 260, 265 (D.S.C. 1995)); *see, e.g.*, *Triplett v. R.M. Wade & Co.*, 200 S.E.2d 375, 378–79 (S.C. 1973). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." *Cockrell v. Hillerich & Bradsby Co.*, 611 S.E.2d 505, 508 (S.C. 2005) (citing *Moosally v. W.W. Norton & Co., Inc.*, 594 S.E.2d 878, 883 (S.C. Ct. App. 2004)); *Cozi Invs. v. Schneider*, 252 S.E.2d 116, 118 (S.C. 1979) ("South Carolina's Long-Arm Statute has been construed on several occasions as a grant of jurisdiction as broad as constitutionally permissible. Hence, the parameters of our Long-Arm Statute are restricted only by the due process limitations." (internal citations omitted)).

The Due Process Clause[3] is satisfied for personal jurisdiction purposes if a defendant "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). A defendant purposefully avails itself of the privilege of conducting activities within a forum state by establishing sufficient minimum contacts such that "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). If the defendant has sufficient minimum contacts with the forum state, the defendant's minimum contacts satisfy the Due Process Clause requirement "that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.'" *Id.* at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)) (alteration in original); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)

---

[3] In this case,

> [b]ecause . . . jurisdiction . . . exists by virtue of a federal question, "[t]he Due Process Clause that is at issue here is the Due Process Clause of the Fifth Amendment." "The Supreme Court's constitutional jurisprudence of personal jurisdiction . . . includes only state and diversity cases, and thus explicates the demands of the Fourteenth Amendment's Due Process Clause, rather than that of the Fifth's." The Federal Circuit has "nonetheless applied the 'minimum contacts' standard [articulated to determine if an exercise of personal jurisdiction comports with Fourteenth Amendment due process] . . . to questions of personal jurisdiction in federal cases, such as those arising under the patent laws."

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 n.5 (Fed. Cir. 2000) (fourth, fifth, and seventh alterations in original) (citations omitted); *see also 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) ("While we defer to the interpretation of a state's long-arm statute given by that state's highest court, particularly whether or not the statute is intended to reach the limit of federal due process, when analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies." (internal citations omitted)); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–65 (Fed. Cir. 1994) (agreeing the due process issue in the determination of personal jurisdiction in patent cases "is intimately related to substantive patent law. Thus, argues Beverly, we are free to develop our own law on this issue").

("[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.").

Under the "minimum contacts test," a court "examines the number and nature of a defendant's contacts with the forum." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998). Determining whether the defendant has sufficient minimum contacts involves evaluating the relationship between the defendant, the forum, and the litigation. *See Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). Sufficient minimum contacts do not include those that are random, fortuitous, or attenuated, *Burger King*, 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299), or those that are the product of the "'unilateral activity of another party or a third person,'" *id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).[4] After examining the number and nature

---

[4] Although Federal Circuit law applies to the determination of whether personal jurisdiction exists in this case, the Court finds instructive the Fourth Circuit's collection of factors used by federal courts to determine whether a defendant has sufficient minimum contacts with the forum; these factors include, but are not limited to, the following:

- whether the defendant maintains offices or agents in the forum state, *see McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957);

- whether the defendant owns property in the forum state, *see Base Metal Trading, Ltd. v. OJSC*, 283 F.3d 208, 213 (4th Cir. 2002);

- whether the defendant reached into the forum state to solicit or initiate business, *see McGee*, 355 U.S. at 221, 78 S. Ct. 199; *Burger King*, 471 U.S. at 475–76, 105 S. Ct. 2174;

- whether the defendant deliberately engaged in significant or long-term business activities in the forum state, *see Burger King*, 471 U.S. at 475–76, 481, 105 S. Ct. 2174;

- whether the parties contractually agreed that the law of the forum state

of a defendant's contacts, the court can determine whether it may exercise one of two types of personal jurisdiction—specific or general. *See Red Wing Shoe*, 148 F.3d at 1359.

### *Specific Jurisdiction*

If a cause of action arises out of or relates to the defendant's contacts with the forum, a court may exercise specific jurisdiction. *Helicopteros*, 466 U.S. at 414 n.8; *see* S.C. Code Ann. § 36-2-803. "'[E]ven a single act can support jurisdiction,' so long as it creates a 'substantial connection' with the forum, as opposed to an 'attenuated affiliation.'" *Red Wing Shoe*, 148 F.3d at 1359 (quoting *Burger King*, 471 U.S. at 475 & n.18); *see also LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) ("Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if [a defendant's contacts with the forum] are 'isolated and sporadic.'" (quoting *Burger King*, 471 U.S. at 472–73)). "Flow of a manufacturer's products into the forum . . . may bolster an affiliation germane to specific jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, --- U.S. ---, 131 S. Ct. 2846, 2855 (2011) (emphasis omitted). Thus, a court may exercise specific jurisdiction over the defendant if "(1) the defendant purposefully directed its activities at

---

would govern disputes, *see Burger King*, 471 U.S. at 481–82, 105 S. Ct. 2174;

• whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, *see Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir. 1985);

• the nature, quality and extent of the parties' communications about the business being transacted, *see English & Smith* [*v. Metzger*, 901 F.2d 36, 39 (4th Cir. 1990)]; and

• whether the performance of contractual duties was to occur within the forum, *see Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982).

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharms., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006) (citing *Akro*, 45 F.3d at 1545–46).

### *General Jurisdiction*

If the suit is unrelated to the defendant's contacts with the forum state, the court may exercise general jurisdiction, *Helicopteros*, 466 U.S. at 414 n.9; *see* S.C. Code Ann. § 36-2-802, but the threshold level of minimum contacts necessary to confer general jurisdiction is significantly higher than that required for specific jurisdiction, *see Helicopteros*, 466 U.S. at 414 nn.8–9. To establish general jurisdiction, the plaintiff must show that the defendant "maintains 'continuous and systematic' contacts with the forum state." *LSI Indus.*, 232 F.3d at 1375 (citing *Helicopteros*, 466 U.S. at 414–16). Thus, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 131 S. Ct. at 2853–54.

Summarizing the Supreme Court's rationale in *International Shoe*, the Fourth Circuit has stated,

> "Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction]." Even "continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction over the corporation]." Only when the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a court assert general jurisdiction over a corporate defendant.

*Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (alterations in original) (quoting *International Shoe*, 326 U.S. at 317, 318).[5] The Federal Circuit has noted that neither it nor the Supreme Court "has outlined a specific test to follow when analyzing whether a defendant's activities within a state are 'continuous and systematic,'" but "a court must look at the facts of each case to make such a determination." *LSI Indus.*, 232 F.3d at 1375.

### *Defeating Personal Jurisdiction*

If a plaintiff makes the required showing that there have been sufficient minimum contacts with the forum state by the non-resident defendant, jurisdiction may still be defeated if its exercise would be unreasonable and contrary to concepts of fair play and substantial justice. *See Akro*, 45 F.3d at 1545–46. The reasonableness inquiry is a multi-factor balancing test that weighs "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292) (internal quotation marks omitted). However, defeating an otherwise constitutional exercise of personal jurisdiction on the grounds of unreasonableness is "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are

---

[5] The Fourth Circuit has also stated that "broad constructions of general jurisdiction should be generally disfavored." *Nichols*, 991 F.2d at 1200; *see also Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 550 (E.D. Va. 2004) ("[I]t is clear from the relative scarcity of cases permitting the assertion of general personal jurisdiction over a nonresident corporation that the standard for imposing general jurisdiction is high.").

clearly outweighed by the burden of subjecting the defendant to litigation within the forum."
*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994).

## DISCUSSION

**Judge Cain's Order**

Hubbell contends that, in his Order denying Defendants' original motion to dismiss, Judge Cain must have determined the Court has personal jurisdiction over Fahrenheit because there would be no need to investigate alter ego status and corporate veil piercing if Fahrenheit was not subject to the Court's personal jurisdiction. [Doc. 52 at 1, 2–3.] Defendants contend Judge Cain's Order did not address whether the Court has jurisdiction over the parties but, rather, gave Hubbell the opportunity to take discovery to locate support for Hubbell's proposition that DMF controls Fahrenheit. [Doc. 57 at 15–16.] The Court agrees with Defendants that, without Judge Cain's Order explicitly stating that the Court has personal jurisdiction over Fahrenheit, it is for the Court to decide the issue of personal jurisdiction on Defendants' renewed motion to dismiss and the accompanying briefs. [*See id.* at 16.] Thus, as discussed below, the Court has considered the issue of personal jurisdiction with respect to both DMF and Fahrenheit.

**Specific Jurisdiction**

Defendants argue they are not subject to the Court's specific jurisdiction because (1) Fahrenheit's single sale of an infringing product in South Carolina was manufactured by Hubbell and, in any event, is not enough to establish specific jurisdiction over Fahrenheit, and (2) DMF has not sold any of the accused products into South Carolina. [Doc. 47-1 at 6–9; *see* Doc. 57 at 15–16; *see also* Doc. 57 at 17 (asserting that, because

Hubbell failed to present facts or legal authority in its opposition to Defendants' second motion to dismiss to establish general or specific jurisdiction over DMF, Hubbell has effectively conceded DMF can only be subject to the Court's personal jurisdiction if Fahrenheit's actions are attributable to DMF).]

Generally, when an alleged infringer is shown to have sold the accused product in the forum state, the forum may exercise personal jurisdiction over the alleged infringer. *See Beverly Hills Fan*, 21 F.3d at 1570–71. Courts have repeatedly held, however, that jurisdiction may not be manufactured by the conduct of others. *See Red Wing Shoe*, 148 F.3d at 1359 (holding contacts resulting from the unilateral activity of others do not count in the minimum contacts calculation); *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1127 (4th Cir. 1986); *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 112 (D. Conn. 1998) (holding one sale by manufacturer of an allegedly infringing product, totaling $246, to a single unsolicited buyer in the forum state did not satisfy the minimum contacts requirement for the exercise of specific jurisdiction).

Here, the only evidence of sales of the accused product in South Carolina is one unsolicited sale—of two of the accused products and trim for a total of $139—and Hubbell acknowledges the sale was to an entity acting on Hubbell's behalf.[6] [Doc. 28 at 2, 5 n.2.]

---

[6] The sale was made to CED Greenville [Doc. 47-2 ¶ 12], but Hubbell has asserted that the sale was "to an entity correctly believed to be acting on behalf of Hubbell" [Doc. 28 at 2] and "[t]hose units were, indeed, ultimately purchased by Hubbell for use in evaluating whether the accused products infringed one or more claims of the asserted . . . patent" [*id.* at 5 n.2]. Hubbell argues it did not "unilaterally" manufacture this contact [*id.*], but Defendants point out that the circumstances surrounding the sale—including the temporal proximity to the filing of the Complaint, the size of the order, the multiple attempts to place the order, and CED Greenville's physical proximity to Plaintiff Hubbell Lighting, Inc.—suggest that Hubbell did in fact manufacture the only sale into South Carolina of the accused products [Doc. 47-1 at 4–5; Doc. 47-2 ¶¶ 12–17]. In their response to Defendants' second motion to dismiss, Hubbell does not address Defendants' conclusion that Hubbell must have manufactured the sale, other than to identify CED Greenville as a purchaser of the accused products. [Doc. 52 at 11.] In any event, taking the facts in the light most favorable to Hubbell, the Court finds the one $139, unsolicited sale of the accused product in South Carolina is not enough to establish

The Court finds this one sale of the allegedly infringing product linking Fahrenheit to South Carolina cannot form the basis for specific jurisdiction over Fahrenheit because it did not purposefully avail itself of the privilege of conducting activities in South Carolina. Although Hubbell does not admit that it instigated the sale to manufacture personal jurisdiction, Hubbell does admit that it obtained the only accused products that have reached South Carolina. Therefore, the Court concludes this one sale cannot form the basis for specific jurisdiction because Hubbell's cause of action did not arise out of this sale.

**General Jurisdiction**

Defendants contend they are not subject to the general personal jurisdiction of this Court because (1) Fahrenheit's minimal contacts with South Carolina do not satisfy the high standard for asserting general jurisdiction over Fahrenheit; (2) DMF has only meager sales of unrelated products in South Carolina and has not sold the accused products anywhere; and (3) no basis for vicarious liability is alleged in the Complaint. [Doc. 47-1 at 6, 9–10; *see also* Doc. 57 at 3–15 (arguing Hubbell cannot establish DMF is Fahrenheit's alter ego and, therefore, cannot establish the Court has personal jurisdiction over DMF), 17 (asserting Hubbell has effectively conceded DMF can only be subject to the Court's personal jurisdiction under Hubbell's alter ego theory).]

To decide whether to exercise general jurisdiction over an out-of-state defendant, a court must analyze the facts of the specific case before it. *LSI Indus.*, 232 F.3d at 1375. For the court to exercise general jurisdiction, the facts must demonstrate that the defendant has engaged in continuous and systematic activity within the forum, regardless

---

specific jurisdiction over Defendants, agreeing with other courts who have held that such small, unsolicited sales were not enough to establish specific jurisdiction. *See, e.g.*, *Edberg*, 17 F. Supp. 2d at 112.

14

of whether the activity is related to the plaintiff's cause of action.  *Id.* at 1375 (citing *Helicopteros*, 466 U.S. at 414–16).  For example, in *LSI Industries*, the Federal Circuit found the defendant was subject to general jurisdiction in the forum because the defendant had millions of dollars in sales and a broad distributorship network in the forum.  *Id.*  In contrast, a defendant's contacts were not continuous and systematic where the contacts consisted of "attendance at trade shows, purchases of parts and a machine, the sale of a product for a veterinary application to one customer, and a pair of consultations about product development."  *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009).  Finally, in *Helicopteros*, the Supreme Court held a defendant's contacts with the forum were not continuous and systematic, first noting the defendant did not have a place of business in the forum and had never been licensed to do business in the forum.  466 U.S. at 416.  The Court also noted the defendant's contacts were limited to sending its chief executive officer to the forum for a contract-negotiation session; accepting into its bank account in another state checks drawn on a bank in the forum; purchasing helicopters, equipment, and training services for substantial sums from a company in the forum; and sending the defendant's personnel for training at another company's facilities in the forum.  *Id.*; *see also Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 F. App'x 322, 337 (Fed. Cir. 2003) (unpublished opinion) (holding the defendant had insufficient contacts with the forum to exercise general jurisdiction and collecting cases where the defendants did not have sufficient contacts for the court to exercise general jurisdiction).

### *DMF's Contacts with South Carolina*[7]

DMF is a closely held California corporation, and its offices are in Carson, California. [Doc. 47-2 ¶ 3.] DMF has one sales manager in Florida and one sales manager in Texas; its 35 other employees work at its place of business in Carson. [*Id.* ¶ 8.] DMF sells its products through independent manufacturers' representatives ("independent reps"), with at least one such representative in all fifty states. [*Id.* ¶ 9.] DMF's independent rep in South Carolina is CAL, which is based in Greenville, South Carolina; DMF has a representation contract with CAL.[8] [*Id.* ¶¶ 9–10.] Over the past three years, DMF averaged approximately $18,000 in annual sales of its products to South Carolina customers, which represents about 0.0015% of DMF's annual sales during the same period.[9] [*Id.* ¶ 10.]

DMF has never had any offices, real or personal property, bank accounts, warehouse space, or employees in South Carolina. [*Id.* ¶ 8.] It has not advertised or attended trade shows in South Carolina, and none of its employees has solicited customers or regularly visited South Carolina. [*Id.*] DMF is not registered to do business in South Carolina. [*Id.*] DMF does not sell its products online or post its prices on its website. [*Id.* ¶ 6.]

---

[7] For reference, Plaintiff Hubbell Incorporated is a corporation organized and existing under the laws of Connecticut, with a place of business in Shelton, Connecticut. [Doc. 7 ¶ 1.] Plaintiff Hubbell Lighting, Inc. is a corporation organized and existing under the laws of Connecticut, with a place of business in Greenville, South Carolina. [*Id.*]

[8] Prior to 2009, DMF did not have an independent rep in South Carolina, but its North Carolina-based independent rep, DR Line, was responsible for South Carolina. [Doc. 47-2 ¶ 10.]

[9] These sales do not include sales of the accused product; DMF has never sold the accused product anywhere. [Doc. 47-2 ¶ 6.]

16

### *Fahrenheit's Contacts with South Carolina*

Fahrenheit is a Delaware corporation and is registered to do business only in California. [*Id.* ¶ 4.] Its offices are in Carson, California. [*Id.*] Fahrenheit does not sell its products online or post its prices on its website. [*Id.* ¶ 6.] Fahrenheit has never had any offices, real or personal property, bank accounts, warehouse space, or employees in South Carolina. [*Id.* ¶ 6.] It has not advertised, solicited customers, or attended trade shows in South Carolina and is not registered to do business in South Carolina. [*Id.*] Fahrenheit has made only one sale into South Carolina, for a total of $139, including two of the accused products and trim. [*Id.* ¶ 12; *see also id.* at 13 (invoice for the one South Carolina sale of the accused product).]

### *Analysis*

Based on the above, Hubbell has failed to make a prima facie showing that Defendants have sufficient minimum contacts with South Carolina to support the exercise of general jurisdiction. While Defendants do have some contacts with South Carolina, the number and nature of their contacts is insufficient to support the exercise of general jurisdiction. *See Red Wing Shoe*, 148 F.3d at 1359 ("The 'minimum contacts' test examines the number and nature of a defendant's contacts with the forum."). Defendants do not maintain offices in South Carolina and are not registered to do business in South Carolina. [Doc. 47-2 ¶ 8.] Defendants do not have employees in South Carolina, own no property in South Carolina, and do not maintain any bank accounts in South Carolina. [*Id.*] Defendants do not advertise or solicit customers in South Carolina. [*Id.*] Further, DMF has submitted that its sales of products in South Carolina—none of which were of the accused

product—are a minuscule portion of its total sales. [*Id.* ¶¶ 6, 10.] Fahrenheit has made only one sale in South Carolina, which was, in effect, to Hubbell. [*Id.* ¶ 12; *see* Doc. 28 at 5 n.2.]

As a result, the Court concludes Hubbell has not carried its burden of demonstrating Defendants have sufficient minimum contacts with South Carolina for the Court to exercise general jurisdiction over Defendants. Even if the Court were to find Defendants were "doing business" in South Carolina, Defendants' few contacts with the state preclude a finding that Defendants had "continuous and systematic" contacts with South Carolina, and an assertion of general personal jurisdiction would violate the Due Process Clause. *See Helicopteros*, 466 U.S. at 416. Accordingly, this Court is without the power to assert personal jurisdiction over Defendants.[10]

---

[10] As outlined above, Hubbell argues (1) Judge Cain's Order establishes the Court has jurisdiction over Fahrenheit and (2) the corporate veil between DMF and Fahrenheit should be disregarded such that the Court also has jurisdiction over DMF. [*See* Doc. 52.] However, as discussed, Judge Cain's Order does not state that Fahrenheit or DMF are subject to the personal jurisdiction of this Court. [Doc. 35.] Further, even if the contacts with South Carolina of both DMF and Fahrenheit were considered as committed by a single entity—the ultimate result under Hubbell's alter ego theory—the contacts are not sufficient minimum contacts to subject DMF and Fahrenheit to the jurisdiction of this Court. Only one sale of the accused products into South Carolina has been identified, and sales of unrelated products in South Carolina have been minimal. [Doc. 47-2 ¶¶ 10, 12.] Moreover, there is no indication that the independent rep in South Carolina possesses promotional materials for the accused products. [*See id.* ¶ 9 (explaining DMF's relationship with its independent reps).] Hubbell has not identified any other type of contacts between Defendants and South Carolina. Therefore, even assuming Defendants' conduct is fairly attributable to one entity, Hubbell has failed to demonstrate this Court may properly exercise personal jurisdiction over Defendants, and Defendants' motion to dismiss for lack of jurisdiction should be granted.

**CONCLUSION**

Wherefore, based on the foregoing, the Court recommends Defendants' second motion to dismiss for lack of jurisdiction [Doc. 47] be GRANTED[11] and Hubbell's motion to compel and to extend time of discovery [Doc. 44] be FOUND AS MOOT.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

September 27, 2012
Greenville, South Carolina

---

[11] Because the Court finds jurisdiction is lacking as to both Defendants, the Court does not address Defendants' alternative motion for transfer of venue. [*See* Doc. 47-1 at 11; Doc. 57 at 17.]